[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-13699
Non-Argument Calendar
_____

D.C. Docket No. 0:19-cv-61461-RAR

YARINELL ROMAN,
on behalf of themselves and all others similarly situated,
PAUL ROBERTS, II,
on behalf of themselves and all others similarly situated,
JOAQUIN RIVERA,
on behalf of themselves and all others similarly situated,

Plaintiffs - Appellants,

versus

SPIRIT AIRLINES, INC.,

Defendant - Appellee,

_____

19-cv-62725

CINTAYA LARIOS GUZMAN,
individually and on behalf of a class of
similarly situated individuals,

Plaintiff,

versus

SPIRIT AIRLINES, INC.,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 23, 2021)

Before JORDAN, NEWSOM, and GRANT, Circuit Judges.

PER CURIAM:

For $6, a Spirit Airlines passenger can buy an optional "Shortcut Security" service. Spirit promises the passenger that the service will expedite his airport security screening process. The plaintiffs in this case each purchased Spirit's Shortcut Security service. They then discovered, according to their complaint, that the service was bogus. When they asked TSA agents where the "shortcut" was, the TSA agents laughed at them and told them to go through the same general security line as everyone else, which they did. Later, they learned that many other Spirit passengers had the same experience.

The plaintiffs sued Spirit in federal court on behalf of multiple classes of customers who bought Spirit's Shortcut Security service and received no

2

benefit.   They brought state-law causes of action for breach of contract, deceptive and unfair trade practices, and unjust enrichment.   They invoked federal diversity jurisdiction based on 28 U.S.C. § 1332(d) because they sued on behalf of more than 100 class members with combined claims exceeding $5 million.

Spirit moved to dismiss the action.  Spirit explained that, regardless of whether it broke the law, the plaintiffs had each agreed to not bring class actions against it.   The contract of carriage that each passenger signed while booking his flights, Spirit contended, expressly prohibited such suits.  And if the plaintiffs had to bring their claims individually rather than as a class, each plaintiff presented an insufficient amount in controversy—just $6 each—to satisfy the statutory requirements for federal diversity jurisdiction.  The district court agreed with Spirit and dismissed the case because it read the contract of carriage to prohibit the plaintiffs from bringing these claims as class actions.

## I

We review dismissals for lack of jurisdiction de novo.  *Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002).  All parties agree that if the plaintiffs can't bring these claims as class actions, they don't satisfy the requirements for diversity jurisdiction.  Whether the case was properly dismissed, then, turns entirely on whether the plaintiffs agreed to not bring these claims as class actions.

Each plaintiff, when booking with Spirit, agreed to Spirit's contract of carriage. That contract contains an unequivocal class-action waiver, providing that a lawsuit brought "pursuant to" the contract of carriage can't be brought as a class action:

> No Class Action – Any case brought pursuant to this Contract of Carriage, Spirit's Tarmac Delay Plan, or Spirit's Guest Service Plan must be brought in a party's individual capacity and not as a plaintiff or class member in any purported class or representative proceeding.

Thus, so long as these claims were brought "pursuant to" the contract of carriage, they fall within the scope of the agreement's prohibition on class actions. The plaintiffs contend that the contract of carriage didn't govern their separate purchase of Shortcut Security, so the class-action waiver doesn't apply.

Spirit's contract of carriage provides, in its fares section, that in addition to his flight, a customer can separately purchase certain optional services in a variety of ways:

> Optional services may be purchased separately during the booking process by calling Reservations, on spirit.com or at the airports. Click here for optional services.

On the "optional services" link on Spirit's website, it lists, among other services, "Shortcut Security." In other words, the contract of carriage references Shortcut Security as one of the possible components of the passenger's relationship with Spirit. And the contract of carriage again references these "optional services" in at least three more places.

4

The plaintiffs emphasize that the references to "optional services" fell within a section dedicated to "fares." From that placement, they reason that the phrase "optional services," as used in the contract of carriage, "was intended to relate to only the purchase of the ticket itself" and not to the later purchase of the Shortcut Security service.

We conclude, though, that a section on "fares" is a sensible place to refer to all optional services, including the Shortcut Security service. The word "fare[]" means "[a] passage or excursion for which a price is paid" or the "[c]ost of conveyance." *See Fare*, Oxford English Dictionary (online ed.) (last visited July 22, 2021). The Shortcut Security service imposes an additional cost on a customer's paid "passage or excursion." It specifically concerns his procession to his flight, which is part of that passage. Furthermore, any contention that the section should be read narrowly is foreclosed by its clarification that "fares . . . include the base fare" but that "[a]dditional Spirit optional services may apply."

If that weren't enough, the contract of carriage links to the website, which expressly identifies the Shortcut Security service as one of the optional services referenced therein.[1] The contract of carriage, therefore, makes clear that its reference to optional services includes the Shortcut Security service.

---

[1] As to this point, the plaintiffs note that Florida law allows terms and conditions to be "incorporated by reference in a contract if the contract specifically describes the document and expresses the parties' intent to be bound by its terms." *Mgmt. Computer Controls, Inc. v.*

5

Because the contract of carriage references and thereby governs optional services, and because those optional services include the Shortcut Security service, the plaintiffs' claims concerning that service were all brought pursuant to the contract of carriage.  It follows that their claims fell within the scope of the class-action waiver, and thus that they were obligated to bring them individually.  As individual claims, the plaintiffs do not satisfy the statutory amount-in-controversy requirement and must be dismissed for lack of jurisdiction.  *See* 28 U.S.C. § 1332(a).

**AFFIRMED**.

---

*Charles Perry Const., Inc.*, 743 So. 2d 627, 631 (Fla. Dist. Ct. App. 1999).  Putting aside Spirit's counterargument that this rule of state contract law may be preempted by federal notice regulations, the rule seems to apply only when the collateral document's terms and conditions govern the actual dispute, not when, as here, the collateral document simply clarifies the meaning of terms and conditions, all of which are contained in the contract itself.